24sc2944 KMM/
JFD

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. _____

United States of America,

        Plaintiff,

   v.

1. Evergreen Recovery Inc.;
2. Evergreen Mental Health Services Inc.;
3. Ethos Recovery Clinic Inc.
4. Second Chances Recovery Housing Inc.;
5. Second Chances Sober Living, Inc.;
6. David Backus;
7. Shawn Grygo; and
8. Shantel Magadanz,

        Defendants.

**FILED UNDER SEAL**

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

RECEIVED JUL 25 2024 CLERK U.S. DISTRICT COURT MINNEAPOLIS, MINNESOTA

SCANNED JUL 25 2024 U.S. DISTRICT COURT MPLS

Plaintiff United States of America, for its Complaint against Defendants, alleges:

1. The United States brings this action for a temporary restraining order, preliminary and permanent injunction, and other equitable relief pursuant to 18 U.S.C. § 1345 to enjoin the alienation and disposition of property derived from the commission of the fraud or property of equivalent value for the purpose of preventing a continuing and substantial injury to the United States, the State of Minnesota, and the public.

**JURISDICTION AND VENUE**

2. Plaintiff is the United States of America.

3. Defendants are all either residents of the State of Minnesota, persons who transact business in the State of Minnesota, or corporations who transact business in the State of Minnesota. Personal jurisdiction is proper over each Defendant as they either

reside in or transact business in the State of Minnesota.

4. This Court has subject matter jurisdiction over this section pursuant to 18 U.S.C. § 1345.

5. Venue is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

6. Medicaid is a public health insurance program. Each state in the United States has its own Medicaid program that is jointly funded by the federal and state governments. Federal funding is distributed from the Centers for Medicare and Medicaid Services ("CMS"), part of the U.S. Department of Health and Human Services. State funding is distributed from the Minnesota Department of Human Services ("DHS"). DHS also has the authority to certify private managed care organizations ("MCOs") to pay for defined health care benefits for people enrolled in Medicaid in exchange for a capitated payment, which is a fixed amount of money that Medicaid pays medical providers for each patient enrolled in the health plan. This Complaint will refer to these entities collectively as "Medicaid."

7. Evergreen Recovery Inc. ("Evergreen Recovery") is a business incorporated under Minnesota Statutes Chapter 302A. It is licensed by DHS to provide substance use disorder treatment to members of the public. Evergreen Recovery is currently serving approximately 600 clients. It is owned by David Backus and conducts business at 1400 Energy Park Drive in Saint Paul, Minnesota. Virtually all of Evergreen Recovery's clients receive health insurance from Medicaid. Evergreen Recovery's total Medicaid revenue has grown annually from approximately $1 million in 2019 to $20 million in 2023.

8.  Evergreen Mental Health Services Inc. ("Evergreen Mental Health Services") is a business incorporated under Minnesota Statutes Chapter 302A. It offers psychiatric medication management and mental health therapy services to Evergreen Recovery clients. Evergreen Mental Health Services is co-owned by Backus and his wife, Shawn Grygo. Evergreen Mental Health Services conducts business at 1400 Energy Park Drive in Saint Paul, Minnesota.

9.  Ethos Recovery Clinic Inc. ("Ethos Recovery Clinic") is a business incorporated under Minnesota Statutes Chapter 302A. It is licensed by DHS to provide outpatient opioid treatment. Ethos Recovery Clinic is currently serving approximately 80 clients. It is co-owned by Backus and Grygo. Ethos Recovery Clinic conducts business at 7766 Highway 65 NE in Spring Lake Park, Minnesota.

10. Second Chances Recovery Housing, Inc. ("Second Chances Recovery Housing") is a business incorporated under Minnesota Statutes Chapter 302A. It offers supportive services housing. Backus and Grygo co-own Second Chances Recovery Housing. It conducts business at 1400 Energy Park Drive in Saint Paul, Minnesota.

11. Second Chances Sober Living, Inc. ("Second Chances Sober Living") is a business incorporated under Minnesota Statutes Chapter 302A. It owns or affiliates with sober living homes where most of Evergreen Recovery's clients live free of charge and is currently providing housing for approximately 520 Evergreen Recovery clients. Second Chances Sober Living is owed by Backus and conducts business at 1400 Energy Park Drive in Saint Paul, Minnesota.

12. Only Evergreen Recovery and Ethos Recovery Clinic bill Medicaid for

providing services to clients and therefore receive Medicaid payments. However, the other entities all purport to provide services to Evergreen Recovery and Ethos Recovery Clinic clients.

13. David Backus owns Evergreen Recovery and Second Chances Sober Living. He has a 50 percent interest in Evergreen Mental Health Services, Second Chances Recovery Housing, and Ethos Recovery Clinic; he co-owns these businesses with Grygo, his wife. He resides in Minnesota.

14. Shawn Grygo has a 50 percent interest in Evergreen Mental Health Services, Second Chances Recovery Housing, and Ethos Recovery Clinic; she co-owns these businesses with Backus, her husband. Grygo is the registered agent of Evergreen Recovery and is primarily responsible for operating the business. She resides in Minnesota.

15. Shantel Magadanz is Evergreen Recovery's Chief Clinical Officer. She is primarily responsible for operating the clinical side of Evergreen Recovery and is friends with Backus and Grygo. She resides in Minnesota.

## THE FRAUD SCHEME

16. The United States' investigation is set forth in detail in the Affidavit of FBI Special Agent Kurt Beulke, filed concurrently with this Complaint. In summary, the United States' investigation has revealed that Defendants have devised a scheme to defraud the United States, the State of Minnesota, and private MCOs (collectively, "Medicaid"). *See generally* Beulke Affidavit.

17. The United States has probable cause to believe Defendants have conspired to commit offenses against the United States by engaging in an illegal and fraudulent

scheme to bill Medicaid for substance abuse treatment services not provided in violation of 18 U.S.C. § 1347 ("Health care fraud").

18. Evergreen Recovery bills Medicaid for group counseling services it does not provide. Beulke Affidavit ¶¶ 34(a)–(b); 48–41; *passim*. For example, after Evergreen Recovery's counselors submit signed attendance logs to Evergreen Recovery's billing employees, Evergreen Recovery routinely adds client names who did not attend group counseling to the logs and bills Medicaid for having provided those services. *Id.* ¶ 34(a).

19. Evergreen Recovery also bills for group counseling services it does not provide when it provides free lunches and dinners for its clients. Evergreen Recovery bills Medicaid for an hour of "group counseling" for each meal provided, asserting clients were provided "therapeutic recreation" even when they simply take a meal from Evergreen Recovery and Evergreen Recovery provides them no services. *Id.* ¶ 34(b); *passim*.

20. In recent years, somewhere between 30 to 40 percent of the hours Evergreen Recovery has billed Medicaid for group counseling services are falsified. *Id.* ¶ 54. These fraudulent claims subject CMS, DHS, and the public fisc to continuing and substantial economic harm. *Id.*

21. The United States also has probable cause to believe that Defendants have conspired to commit offenses against the United States by engaging in an illegal and fraudulent kickback scheme in violation of 42 U.S.C. § 1320a-7b ("Anti-Kickback Statute").

22. Evergreen Recovery and Ethos Recovery Clinic provide free housing to the vast majority of their clients in exchange for those clients committing to attend a certain

level of programming for which Evergreen Recovery and Ethos Recovery Clinic can bill Medicaid. Beulke Affidavit ¶¶ 39–44. Evergreen Recovery and Ethos Recovery Clinic thus fraudulently bill Medicaid for services tainted by illegal kickbacks, subjecting CMS, DHS, and the public fisc to continuing and substantial economic harm.

23. The magnitude of the fraud perpetrated by the Defendants is substantial. It is estimated that Defendants have received at least $8.9 million in Medicaid payments from claims Evergreen Recovery submitted for group counseling services it did not provide. *Id.* ¶ 54. It is estimated that the Defendants have received at least $28 million in Medicaid payments from claims induced via illegal kickbacks. *Id.* ¶ 55.

24. As a result of their scheme to defraud, Defendants have been able to amass assets including expensive homes, real property, and luxury vehicles. *Id.*, ¶¶ 56–60. The individual defendants also frequently travel via private jet and take expensive vacations to destinations including Las Vegas, Nevada, the Hamptons in New York, and Disney World in Florida. *Id.*

25. The United States has probable cause to believe that Defendants are dissipating, and will continue to dissipate, the proceeds from their fraud scheme. *Id.* ¶¶ 61–66. At the same time Defendants purchase expensive cars and travel on expensive vacations, they are repeatedly unable to pay Evergreen Recovery's and Ethos Recovery Clinic's employees. *Id.*

26. Evergreen Recovery's financial challenges have accelerated in recent months. *Id.* ¶ 63. In June and July 2024, Evergreen Recovery has been unable to pay its employees on at least three separate paydays. *Id.* At an all-employee meeting on July 23,

2024, after Backus and an employee almost engaged in a physical fight, Grygo wrote paper checks to all employees present for the wages they were owed, plus an additional $1,000 bonus each. *Id.* ¶ 65. At least some of the employees who attempted to cash the checks were unable to as they were rejected by the bank. *Id.* ¶ 65.

27. Ethos Recovery Clinic employees have also not been paid recently. One employee reports he was provided with a paper check that was returned by the bank the week of July 22, 2024 because the bank reported the account had been closed. *Id.* ¶ 66.

## COUNT ONE - INJUNCTIVE RELIEF
## 18 U.S.C. § 1345; Fed. R. Civ. P. 65

28. The United States realleges and incorporates by reference paragraphs 1 through 27 of this Complaint.

29. Based upon the investigation conducted in this case, and the allegations contained in this Complaint, the United States has probable cause to believe that Defendants have committed offenses under 18 U.S.C. § 1347 (Health care fraud) and 42 U.S.C. § 1320a-7b (the Anti-Kickback Statute). The public has suffered immediate and irreparable injury, loss, and damage because of Defendants' scheme to defraud.

30. The United States brings this action to restrain the transfer of funds and assets now in Defendants' hands as ill-gotten gains.

31. Upon a showing of probable cause that Defendants are committing a federal health care offense, as defined by 18 U.S.C. § 24(a), the United States is entitled, pursuant to 18 U.S.C. § 1345(a)(2), to a temporary restraining order, a preliminary injunction, a permanent injunction, and any other action which this Court deems just. This relief may

include an order freezing Defendants' assets that are the product of, or profit on the product of, their fraud.

32.     Pursuant to Federal Rule of Civil Procedure 65(b), an applicant may be granted a temporary restraining order without written or oral notice to the adverse party or that party's attorney if it clearly appears from specific facts shown by an affidavit that immediate and irreparable injury will result before the adverse party can be heard.

33.     Pursuant to 18 U.S.C. § 1345, a permanent or temporary injunction or restraining order shall be granted without bond.

## PRAYER FOR RELIEF

WHEREFORE, the United States requests, pursuant to 18 U.S.C. § 1345 and the Court's inherent equitable powers, that the Court:

A.      Issue a temporary restraining order and, after hearing, a preliminary injunction preventing Defendants; their agents (including financial and banking institutions and other entities having possession or control of Defendants' assets); their officers; their employees; and all persons in active concert or participating with Defendants in their affairs:

    1.   from transferring, converting, encumbering, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, or otherwise disposing of any funds, property, artwork, coins, precious metals, jewelry, contracts, share of stock, or other assets, wherever located, that are: (a) owned or controlled by Defendants, in whole or in part; or (b) in the actual or constructive possession of Defendants; or (c) owned, controlled by, or in

the actual or constructive possession of any entity that is directly or indirectly owned, managed, controlled by, or under common control with Defendants, including, but not limited to, any assets up to and including $28 million held by or for Defendants in any account at any bank or financial institution, or with any broker-dealer, escrow agent, title company, commodity trading company, previous metal dealer, or other financial institution of any kind; and

2. from opening or causing to be opened any safe deposit boxes or storge facilities titled in the name of any Defendant, or subject to access by any Defendant or under their control, without providing the United States prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Complaint;

B. Order Defendants, their agents, employees, attorneys, and all persons acting in concert and in participation with them to provide to the United States within seven (7) business days a list of all financial institutions, including but not limited to banks and brokerage houses, at which all Defendants currently maintain or have maintained savings, checking, or other accounts in the previous four (4) years; savings, checking, or any other kind of account or other safe deposit box into which money has been deposited in Defendants' names or in the names of their agents, employees, officers, persons acting in concert with them, or any business names under which they operated, together with the number or other designation of each such account or box;

C. Provide that between the date of the service of a Temporary Restraining

Order on Defendants and a hearing on a preliminary injunction, the United States and Defendants can agree to unfreeze accounts necessary for the continuing payment of employees and continuation of treatment services until the Court considers the appointment of a receiver pursuant to 18 U.S.C. § 1345(a)(2)(B)(ii);

  D. Enjoin Defendants from conditioning residence in Second Chances Sober Living Homes or other homes for which Defendants pay rent or other remuneration to a third-party on enrollment in Evergreen Recovery or Ethos Recovery Clinic drug treatment programs;

  E. Enjoin Defendants from closing any Second Chances Sober Living or affiliated residence without advanced notice to the United States;

  F. Require Defendants to fully comply with the Minnesota statutory schemes by which their operations are governed, including but not limited to requirements that Defendants:

    1. Provide DHS with full access to their premises, records, employees, and clients pursuant to Minn. Stat. § 245A.04, subd. 5;

    2. Maintain client health and safety and protect client rights pursuant to Minn. Stat. § 245G.15;

    3. Ensure that employees are not subject to retaliation for engaging in good-faith communications with DHS or law enforcement about client rights, health, or safety pursuant to Minn. Stat. § 24513, subd. 1(1);

    4. Comply with all specified requirements related to client records outlined in Minn. Stat. § 245G.09;

5. Comply with all requirements requiring treatment service and treatment coordination and coordinate, as applicable, with probation officers, county workers, guardians and other required persons as necessary to ensure treatment coordination; and

6. To the extent Defendants intend to cease operations, (i) follow all requirements of their service termination policies pursuant to Minn. Stat. § 245G.14 and (ii) plan for transfer of clients and records upon closure as outlined in Minn. Stat. § 245GA.04, section 15a, including but not limited to notifying affected clients of the closure at least 25 days prior to closure and providing clients with information on how to access their records; and

G. Award such other additional relief as the Court determines to be just and proper.

Dated: July 25, 2024

ANDREW M. LUGER
United States Attorney

*s/Emily M. Peterson*

BY: EMILY M. PETERSON
Assistant U.S. Attorney
Attorney ID No. 0395218
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Emily.Peterson@usdoj.gov
(612) 664-5600

Attorneys for United States of America