24sc2944 kmm/JFD

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Civil No. _____

United States of America,

        Plaintiff,

    v.                                **FILED UNDER SEAL**

1. Evergreen Recovery Inc.;
2. Evergreen Mental Health Services Inc.;    **AFFIDAVIT OF FBI SPECIAL**
3. Second Chances Recovery Housing Inc.;    **AGENT KURT BEULKE**
4. Second Chances Sober Living, Inc.;
5. Ethos Recovery Clinic Inc.
6. David Backus;
7. Shawn Grygo; and
8. Shantel Magadanz,

        Defendants.





I, Kurt Beulke, being first duly sworn, state that the following is true and correct to the best of my belief:

1.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately twelve years. I currently am assigned to the Minneapolis Division of the FBI. As part of my assigned duties, I investigate violations of federal civil and criminal laws including but not limited to violations of Title 31 United States Code, Section 3729 (the False Claims Act), Title 18, United States Code, Section 1347 (health care fraud), and Title 42, United States Code Section 1320a-7b (the Anti-Kickback Statute).

2. The following is known to me by my own investigation or was provided to me by other law enforcement agents and investigators, my review of records, interviews of witnesses, and my training and experience.

3. This Affidavit is submitted in support of a Complaint for injunctive relief under 18 U.S.C. § 1345. I have not included each and every fact known to me regarding this investigation in this affidavit, but only those facts relating specifically to determining whether there is probable cause to believe Defendants and their related entities have been engaged in, or are the recipients of proceeds from, a scheme to violate 18 U.S.C. § 1347 (health care fraud) or 42 U.S.C. § 1320a-7b (the "Anti-Kickback Statute").

4. I am assigned to parallel civil and criminal investigations focusing on the business activities of Evergreen Recovery Inc. and affiliated entities and persons, including Evergreen Mental Health Services Inc., Second Chances Recovery Housing Inc., Second Chances Sober Living, Inc., David BACKUS, Shawn GRYGO, and Shantel MAGADANZ. The civil investigation is regarding violations of the False Claims Act, 31 U.S.C. § 1329. The criminal investigation is regarding offenses including, but not limited to, 18 U.S.C. § 1347 (health care fraud) and 42 U.S.C. § 1320a-7b (the Anti-Kickback Statute). The investigations are being conducted by the U.S. Attorney's Office for the District of Minnesota, the FBI, the U.S. Department of Health and Human Services, and the Minnesota Attorney General's Office.

5. Among other legal violations, our investigation has found probable cause to believe that Defendants are engaged in a scheme to defraud Medicaid and other public and

private health care benefits programs through fraudulent billing related to purported substance abuse treatment services and illegal kickbacks in the form of providing free housing in exchange for attendance at treatment services for which Medicaid can be billed. The scheme has targeted both public and private health care benefit programs in violation of Title 18, United States Code, Section 1347 and involved suspected kickbacks in violation of 42 United States Code, Section 1320a-7b.

6.     I am also aware of administrative investigations being conducted by the Minnesota Department of Human Services ("DHS"), the primary regulator for Evergreen Recovery, into Evergreen Recovery's billing practices, and the Minnesota Department of Labor and Industry, which investigates wage theft complaints.

## DEFENDANTS

7.     David Michael BACKUS is one of the targets of an ongoing criminal investigation into the Subject Offenses. BACKUS is the sole owner of two businesses which claim to provide services in the substance abuse treatment and housing industry: Evergreen Recovery Inc., and Second Chances Sober Living Inc.

8.     In addition to BACKUS' sole ownership in Evergreen Recovery Inc. and Second Chances Sober Living Inc., BACKUS and his wife Shawn GRYGO are 50 percent owners in three additional entities: Evergreen Mental Health Services Inc., Second Chances Recovery Housing, Inc., and Ethos Recovery Clinic Inc.

9.     Evergreen Recovery Inc. ("Evergreen Recovery") is a business incorporated under Minnesota Statutes Chapter 302A. It is licensed by the Minnesota Department of

Health to provide substance use disorder treatment to members of the public. Evergreen Recovery is currently serving approximately 600 clients. It conducts business at 1400 Energy Park Drive in Saint Paul, Minnesota. Virtually all of Evergreen Recovery's clients receive funding for their health insurance through Medicaid.

10.     Evergreen Mental Health Services Inc. ("Evergreen Mental Health Services") is a business incorporated under Minnesota Statutes Chapter 302A. It offers psychiatric medication management and mental health therapy services to clients of Evergreen Recovery. It conducts business at 1400 Energy Park Drive in Saint Paul, Minnesota.

11.     Second Chances Recovery Housing, Inc. ("Second Chances Recovery Housing") is a business incorporated under Minnesota Statutes Chapter 302A. BACKUS has described Second Chances Recovery Housing as offering "supportive housing services." It conducts business at 1400 Energy Park Drive in Saint Paul, Minnesota.

12.     Second Chances Sober Living, Inc. ("Second Chances Sober Living") is a business incorporated under Minnesota Statutes Chapter 302A. It operates or affiliates with sober living homes where most of the clients of Evergreen Recovery live free of charge. Second Chances Sober Living is currently providing free housing for approximately 520 Evergreen Recovery clients. It conducts business at 1400 Energy Park Drive in Saint Paul, Minnesota. Second Changes Sober Living does not have employees of its own and is operated primarily by Evergreen Recovery employees.

13.     Ethos Recovery Clinic Inc. ("Ethos Recovery Clinic") is a business incorporated under Minnesota Statutes Chapter 302A. It provides outpatient opioid treatment. The Ethos Recovery Clinic website describes its services as including on-site medication therapy with methadone and buprenorphine, as well as individual and group therapy and treatment coordination. It does business at 7766 Highway 65 NE in Spring Lake Park, Minnesota. Our investigation has been told by staff employed by DHS that during a recent site visit by DHS to Ethos, DHS was told that Ethos Recovery Clinic does not handle its own billing for services rendered at Ethos. Instead, witnesses on site relayed that Ethos Recovery Clinic submits information for its billing to Evergreen Recovery and that its billing "runs through" Evergreen Recovery.

14.     Evergreen Recovery, Evergreen Mental Health Services, Second Chances Sober Living, Second Chances Recovery Housing and Ethos Recovery Center are collectively referred to herein as the "**Defendant Entities.**" Only Evergreen Recovery and Ethos Recovery Clinic bill Medicaid for providing services to clients and therefore receive Medicaid payments. However, the other entities all purport to provide services to Evergreen Recovery and Ethos Recovery Clinic clients.

15.     In an interview with DHS in May 2024, BACKUS indicated he does not have as much "day to day" interaction with Evergreen Recovery, and that his wife Shawn GRYGO is "essentially the CEO." He estimated Evergreen Recovery had approximately 150 employees.

16. BACKUS and GRYGO have assembled a management team of close friends with whom they operate the Defendant Entities, and, as set forth below, several members of that management team are reasonably believed to be actively engaged in the fraud and sharing in the lucrative proceeds. Additional targets of the criminal investigation include Shantel MAGADANZ (who has, at times, been described as the "Chief Clinical Officer," the "Director of Operations," or the "CEO").

17. BACKUS, GRYGO, and MAGADANZ are collectively referred to herein as the "**Individual Defendants**."

## OVERVIEW OF MEDICAID, MEDICAL ASSISTANCE, AND MANAGED CARE ORGANIZATIONS

18. Through my work on this and other investigations, I have gained some general familiarity with Medicaid, Minnesota's Medical Assistance, and Managed Care Organizations.

19. Medicaid is a public health insurance program. Each state in the United States has its own Medicaid program that is jointly funded by federal and state funding. Federal funding is distributed from the Centers for Medicare and Medicaid Services, part of the U.S. Department of Health and Human Services. State funding is distributed from DHS. DHS also has the authority to certify private managed care organizations (or "MCOs") to pay for defined health care benefits for people enrolled in Medicaid in exchange for a capitated payment, which is a fixed amount of money that Medicaid pays medical providers for each patient enrolled in the health plan.

6

20.     In Minnesota, the Medicaid program is called Medical Assistance. As a state-implemented Medicaid program, Minnesota's Medical Assistance program is subject to both federal regulations as well as Minnesota state law and regulations.

21.     Health care providers may either submit direct fee-for-service billing to be directly reimbursed from Medical Assistance or may negotiate a relationship to fall within the network of an MCO and submit their billing to the MCO for payment processing. For the purposes of this Affidavit, I will refer to both of these options as submitting claims to "Medicaid" or "Medical Assistance" interchangeably.

22.     "Hennepin Health," "UCare," and "Health Partners" are all examples of DHS-certified MCOs in Minnesota.

## SUMMARY OF REGULATORY FRAMEWORK FOR MEDICAID-FUNDED MINNESOTA MEDICAL ASSISTANCE BILLING

23.     Through my work on this investigation, I have gained some general familiarity with certain statutory requirements governing providers that bill Minnesota's Medical Assistance program for substance abuse treatment programming.

24.     Not all substance abuse programming is eligible to be reimbursed through Medical Assistance. Rather, to be billable (either through direct fee-for-service billing, or managed care billing) substance abuse program services must be provided in a certain way, by people with certain qualifications, all of which are defined under the law and published regulations.

25.     For example, for substance abuse counseling to be billed as individual counseling to Medical Assistance, it must be counseling provided by one qualified provider

to one client at a time. For group substance abuse counseling to be billable to Medical Assistance as therapeutic group counseling, the group has to consist of fewer than 16 people per counseling session. Groups larger than 16 are not eligible for billing as therapeutic. Larger groups of up to 48 people may receive non-therapeutic group services, which are billable at a separate, lower rate.

26. Substance abuse treatment providers who submit billing to Medical Assistance or MCOs are also subject to various requirements in terms of how they submit their bills. For example, there are specific requirements as to how types of treatment are coded on bills, requirements that certain kinds of treatment be billed in set time increments for which more than half of the time must be spent performing the service excluding any breaks, and requirements that the provider submitting the bills attest to their accuracy.

## SUMMARY OF FEDERAL FRAMEWORK RELATED TO FRAUDULENT CLAIMS AND KICKBACKS IN HEALTH CARE AND RECOVERY PROGRAMS

27. Through my work on this investigation, I have become generally familiar with 18 U.S.C. § 1347, the federal "health care fraud" statute. I am aware that the health care fraud statute is a criminal statute that prohibits the defrauding of any health care benefit program.

28. Through my work on this investigation, I have become generally familiar with 42 U.S.C. § 1320a-7b, also known as the federal Anti-Kickback Statute. I am aware that the Anti-Kickback Statute is a criminal statute that prohibits the exchange (or offer to

exchange) of anything of value, in an effort to induce (or reward) the referral of business reimbursable by federal health care programs.

## SUMMARY OF THE INVESTIGATION INTO DEFENDANTS

29.     The following overview and summary is based on information I have learned personally based on witness interview and records I have reviewed, or that I have learned from other law enforcement or governmental agencies engaged in parallel or related investigations into Defendants.

30.     Evergreen Recovery and Evergreen Mental Health Services purport to provide direct mental health therapy services and substance abuse treatment services to clients. Evergreen Recovery's website describes it as an outpatient program with co-occurring mental health programming, open to the public for walk-in assessments and placement during business hours. The website also claims the location hosts three group substance abuse sessions each morning, afternoon, and evening, Monday through Friday, and one morning group session on Saturdays and Sundays.

31.     Beginning in late 2023, state and federal law enforcement have directly interviewed at least ten witnesses, including former business partners and people either formerly or currently employed by the Defendant Entities. I participated in approximately half of these interviews and have reviewed summaries of all of them.

32.     Additionally, I am aware that David BACKUS himself made statements and provided information to the DHS in May 2024.

33. I am also aware that former employees and clients of Evergreen Recovery, including BACKUS and other management level employees of Evergreen Recovery sat for media interviews, portions of which were aired in May and June 2024 on Kare11 News:

    a. May 2, 2022 segment, available online at https://www.kare11.com/article/news/investigations/kare-11-investigates-addiction-treatment-center-overbilled/89-eb17d6c9-1f84-4b9e-8aef-8c297ecf6212;

    b. May 9, 2022 segment, available online at https://www.kare11.com/article/news/investigations/kare-11-investigates-feds-launch-probe-into-twin-cities-addiction-treatment-center-evergreen-recovery/89-5ff27f0b-0354-4f30-8287-64f037cbf850; and

    c. June 6, 2024 segment, available online at https://www.kare11.com/article/news/investigations/kare-11-investigates-twin-cities-addiction-recovery-center-billed-taxpayers-for-unqualified-workers/89-11db26be-e0a9-4b4c-8860-afac072a82f2.

34. The witness interviews along with records reviewed by federal law enforcement have revealed systemic fraudulent practices by the Defendant Entities as follows:

    a. Multiple witnesses report that signed group counseling attendance logs and service notes have been altered after they were submitted by the counselors who provided the group counseling to make it appears as if more people attended group treatment than were actually present. At least one counselor has confirmed, upon seeing

records Evergreen Recovery produced to the U.S. Attorney's Office, that the sheets were falsified by someone adding names of people who did not actually attend group treatment, treatment for which Evergreen Recovery then billed to Medicaid. Multiple witness report that Evergreen Recovery created false clinical notes to support those false entries without the counselors' knowledge or permission. Multiple witnesses report raising these concerns while employed to Shantel MAGADANZ, among others.

b.      Multiple witnesses have reported that Evergreen Recovery provides free lunches and dinners to clients at the 1400 Energy Park Drive location in Saint Paul, Minnesota. Evergreen Recovery then records these meals as "therapeutic recreation" when it bills for having provided an hour of group counseling to each person present for the meals, even though the clients are merely retrieving a meal and not receiving any counseling or programming.

35.     The precise role(s) the Individual Defendants or other employees at Evergreen Recovery may have in the fraudulent practices remains under active investigation. David BACKUS represented to DHS that Shawn GRYGO and Shantel MAGADANZ both have "super-user" permissions in Evergreen Recovery's charting software.

36.     Separate to the ongoing civil, administrative, and criminal investigations at the state and federal level, I am aware that Evergreen Recovery's billing practices are also under review with several managed care plans and health benefits programs. One of those

managed care organizations, Hennepin Health, has very recently issued a "stop payment" directive due to the scope of suspected fraud effective August 17, 2024.

37.     DHS plans to stop issuing payments to Evergreen Recovery effective Tuesday, July 30, 2024.

38.     As noted above, the Defendant Entities also include Second Chances Sober Living, Inc. and Second Chances Recovery Housing, Inc. Whereas the two Evergreen entities purport to provide the programs and services, the two Second Chances entities purport to provide sober housing.

39.     Based on the investigation to date, law enforcement understands that clients who enroll in treatment programming at Evergreen Recovery and who are placed in sober housing through Second Chances Sober Living are not required to pay monthly rent for their housing. Instead, the clients are offered housing free of charge to induce them to agree to attend a certain amount of programming at Evergreen Recovery for which Evergreen Recovery can bill Medicaid. In turn, some portion of the health care billing proceeds from the client's substance abuse treatment participation is kicked back to the entities providing housing to the clients, which are primarily owned or affiliated with Second Chances Sober Living.

40.     Evergreen Recovery's website describes the relationship with Second Chances Sober Living as a "partnership" that offers clients services "without the added stress of the financial cost of living." However, the arrangement is plainly mandatory: one business record Evergreen Recovery produced—Second Chances Sober Living's

"Guidelines and Rules" for living in its sober homes—unequivocally reflects that residents

are required to attend group and individual sessions daily:

**While at Second Chances Sober Living, you are REQUIRED to do the following:**
- Abide curfew requirements
- Communicate with the House Manager
- Attend weekly House Meeting
- Attend required daily group & individual sessions
- Keep the house clean and presentable
- Complete assigned chores
- Be SOBER, be HONEST and TRY
- Sign out on the whiteboard

41.     Additionally, the following note in a client file dated November 2022 reflects

conversations in which a licensed counselor at Evergreen Recovery apparently spoke with

housing staff and requested they advise residents if they do not show up for their sessions,

they may be removed from housing:[1]

**Individual note:**
This writer and Second Chance Sober living staff had conversation concerning clients not showing up for their individuals sessions, and I requested that they relay a message to them letting them know that if they do not show up for their individual session they may be faced with being removed from housing. This writer also attempted to reach clients by phone, but there was no response.

42.     Based on the investigation to date, law enforcement understands Second

Chances Sober Living has no employees of its own, and that Evergreen Recovery

employees handle responsibilities related to the housing provided through Second Chances

Sober Living.

43.     Ethos Recovery Clinic appears to have the same arrangement with the

Second Chances entities. The Ethos Recovery Clinic website describes Evergreen

Recovery, Evergreen Mental Health, and Second Chances Sober Living as "valued

---

[1] The highlighting added in this paragraph and the preceding paragraph has been added.

partners" of Ethos Recovery Clinic, and claims Ethos and Evergreen Recovery both "work with" Second Chances as well as the other community partners to provide free housing for those in outpatient programming.

44.     Several witnesses have reported that Evergreen Recovery finds and recruits homeless people at homeless shelters to enroll in substance abuse programming regardless of whether they need or want that programming in order to receive free housing.

45.     Multiple witnesses have reported that the conditions in the sober housing have been dangerous and at times, directly detrimental to recovery goals, and that staff have been instructed to forego calling for emergency responses or police services to the sober houses, and to silence clients who attempt to complain about safety or habitability issues. Clients complain to Evergreen Recovery and their counselors there about open drug use being a recurrent problem in the sober homes. In October 2022, one Evergreen Recovery client murdered two others at a Second Chances Sober Living home in Saint Paul, Minnesota. *See State of Minnesota v. Sandoval*, 62-cr-22-6099 (Ramsey Cty. Dist. Ct.).

46.     Multiple witnesses have also reported that the conditions at Evergreen Recovery's facility at 1400 Energy Park Drive in Saint Paul, Minnesota are dangerous, with clients engaging in open drug use in the parking lots and acting aggressively towards staff and other clients. Staff have similarly been instructed to forego calling for emergency responses or police services.

47. Employees have repeatedly raised their concerns about Evergreen Recovery's billing practices to Evergreen management, including MAGADANZ, to no avail, and often are faced with retaliation when they do so.

48. When one licensed counselor reported his concerns in June 2023 about falsified records and fraudulent billing practices, he met with a supervisor and Shantel MAGADANZ. Rather than address the concerns, MAGADANZ and the supervisor raised pretextual performance complaints that resulted in the counselor's nine-day suspension. When the counselor was cleared to return to work approximately ten days later, he observed that thousands of new clinical notes, dating back years, had been added which did not exist prior to his raising concerns.

49. A subsequent review of a sample Evergreen Recovery's client records demonstrates that GRYGO signed numerous clinical notes during the time period this counselor was suspended, most of which were signed many months after the relevant treatment was supposedly provided.

50. For example, Evergreen Recovery produced the following clinical note showing GRYGO's signature dated June 16, 2023, even though the relevant group treatment session occurred on December 22, 2022. GRYGO's signature is in the place of where the LADC's signature should be even though GRYGO does not provide group counseling at Evergreen Recovery:

**Individual note:**
Client appeared to participate in group.

[Digitally signed by Shawn Grygo on 6/16/2023 at
2:29 pm Central Time]
Signature ███████████ LADC Primary
Counselor

51.     The most recent evidence we have indicates that, as of April 2024, Evergreen Recovery continues to submit Medicaid claims for reimbursement for clients who did not attend group services. Evergreen Recovery also continues to submit Medicaid claims for group treatment after offering its clients free lunches and dinners but not providing them with any treatment or other services.

52.     Evergreen Recovery has sued three former employees in Ramsey County District Court because it believed they were sharing information with Kare11 regarding Evergreen Recovery's fraudulent billing practices.

**SCOPE OF THE FRAUD, EVIDENCE OF ENRICHMENT BY THE INDIVIDUAL DEFENDANTS, AND EVIDENCE OF DISSIPATION OF THE FRAUD PROCEEDS**

53.     The scope of losses resulting from the fraud remains under investigation but as of the date of this affidavit, law enforcement has probable cause to believe the Individual Defendants and Defendant Entities are responsible for at least $28 million in fraudulent billing dating back to at least 2017.

54.     Regarding Evergreen Recovery's billing for group treatment services, our investigation reviewed Evergreen Recovery's billing records for a random date in each quarter dating back to the fourth quarter of 2020, when the false billings appear to begin.

For each date reviewed we counted the number of group treatment entries that appear to be forged on group attendance logs, as well as the group treatment billed (but not provided) when Evergreen Recovery provided lunches and dinners to clients. The proportion of false billings submitted for that date in each quarter ranged from 6 percent in the final quarter of 2020 to 38 percent in the first quarter of 2024. Comparing those per-quarter percentages to Evergreen Recovery's per-quarter Medicaid revenue for group treatment, we estimate Evergreen Recovery has submitted at least $8.9 million in false billings for group treatment since the fourth quarter of 2020.

55.     Similarly, the best evidence we have of the proportion of Evergreen Recovery's clients receiving free housing comes from BACKUS, who told DHS licensing investigators in May 2024 that 520 out of 585 of Evergreen Recovery's clients were receiving free housing, or 89 percent. Assuming that proportion has increased steadily from zero since Second Chances Sober Living began operating in 2017—a conservative assumption, because we have reason to believe the numbers have been higher throughout— that means at least $28 million of the $41.5 million Evergreen Recovery has received from Medicaid over those years has been induced with illegal kickbacks.

56.     David BACKUS and Shawn GRYGO appear to have repeated significant personal profit as a result of the fraudulent scheme. I am aware that in 2022 tax returns, they claimed personal income of nearly $1.8 million, $1.7 million of which came in the form of disbursements from their businesses. Multiple employees have reported the two appear to live a lavish lifestyle involving regular travel (at times via private jet) to Las

Vegas and other destinations, luxury vehicles and designer handbags, and other external indicators of wealth.

57.     Some of these luxury goods are either purchased by or held in the name of Evergreen Recovery. For example, in August 2019 Evergreen Recovery's corporate Wells Fargo account shows a $3,500 purchase at a Louis Vuitton store in Scottsdale, Arizona. In 2022, BACKUS purchased for GRYGO a Mercedes-Benz G-Class SUV, a car purportedly worth approximately $200,000. Although the car is registered to Evergreen Recovery, it is GRYGO's primary vehicle. One witness reported BACKUS bought the car for GRYGO as a reward for growing their business.

58.     Multiple witnesses report that in 2022, BACKUS and GRYGO rented out the Louis Vuitton store at the Galleria mall in Edina, Minnesota so Evergreen Recovery's leadership team could pick out Christmas gifts for themselves.

59.     In July 2023, BACKUS purchased an $850,000 home in Hugo, Minnesota, apparently for GRYGO's parents. In October 2023, BACKUS purchased a home in Dellwood, Minnesota for $1.6 million. In March 2024, BACKUS and GRYGO purchased a $700,000 vacant lot on White Bear Lake. Multiple witnesses have reported BACKUS and GRYGO are also in the process of purchasing a home in Arizona, where they seek to open another substance abuse treatment facility.

60.     I am also aware of evidence indicating Shantel MAGADANZ has profited significantly from the fraud in the form of excessive earnings. According to records maintained by the State of Minnesota, prior to her employment with Evergreen Recovery,

MAGADANZ was employed by a different substance abuse treatment program, where she earned approximately $64,000 in her highest earning year. She began working for Evergreen Recovery in mid-2022. In 2023, Evergreen Recovery paid her an annual income of $703,529. Evergreen Recovery paid her $244,147 in the first quarter of 2024. In 2023 MAGADANZ purchased a $103,000 Cadillac Escalade, a $130,000 BMW M8, and an $82,000 GMC Sierra.

61.     Meanwhile, Evergreen Recovery has consistently been unable to pay its employees. Multiple witnesses report that paychecks at Evergreen Recovery routinely are returned to employees with a note that the relevant account lacks sufficient funds, and at least one witness reported this happens with more frequency after GRYGO and BACKUS have been on expensive vacations.

62.     GRYGO frequently blames the fact that paychecks are being returned unpaid to employees on amorphous "fraud" issues or on employees themselves. For example, in May 14, 2021, GRYGO told employees via email that they had not been paid "due to payroll taking it out of our account twice, it is currently frozen until the issue is resolved. … Our Wells Fargo account has been hacked twice so the level of fraud protection is high and takes some extra steps." In August 2023 she blamed a "fraud alert" on Evergreen Recovery's bank account for employees not being paid. In September 2023 she blamed employees who had "double deposited their checks."

63.     Evergreen Recovery's financial challenges appear to have accelerated in recent months. I am aware that Evergreen Recovery has not paid at least some of its

employees on their regular pay dates for multiple pay periods throughout June and July. According to multiple witnesses, when employees threatened to walk out the week of July 8, 2024 over missing payments, GRGYO and BACKUS flew back from the Hamptons to quell the revolt and GRYGO paid the employees at least some of what they were owed via cash app; the pair then reportedly left on a trip to Disney World. GRYGO blamed Evergreen Recovery's inability to pay employees on "an employee with a payroll check [who] tried to access the bank account business and personal with my birthdate," the assertion that Wells Fargo "closed my account due to excessive fraud attempts," and the assertion that employees were "taking checks early to banks."

64. The Minnesota Department of Labor and Industry and the Wage Theft Division of the Minnesota Attorney General's Office have both received multiple complaints in recent weeks from employees of Evergreen Recovery regarding missing paychecks.

65. At an all-employee meeting on July 23, 2024, after BACKUS and an employee almost engaged in a physical fight, GRYGO wrote paper checks to all employees present for the wages they were owed, plus an additional $1,000 bonus. At least some of the employees who attempted to cash the checks were unable to do so.

66. Ethos Recovery Clinic employees told DHS regulators that Ethos Recovery Clinic has also failed to pay its employees this week. Ethos Recovery Clinic employees alerted DHS that the clinic would be unable to continue dispensing medication to its clients effective Friday, July 24, because the nurses licensed to dispense the medications had quit.

One employee told DHS that a paycheck the employee tried to cash earlier this week was returned because the bank reported the account had been closed.

67.     Given the foregoing, I believe probable cause exists to believe that Defendants are alienating or disposing of property or intending to alienate or dispose of property obtained as a result of federal health care offenses.

## CONCLUSION

68.     Based upon my training and experience and the facts stated in this affidavit, I believe probable cause exists to believe that Defendants have committed, or were the recipient of proceeds from, a scheme to violate Title 18, United States Section 1347 and Title 42, United States Code Section 1320a-7b.

69.     Based on the facts set forth above, I believe there is also probable cause to believe that ill-gotten monies earned by the Defendants through their fraud scheme are, to date, at least $28 million.

70.     Based on the facts set forth above, I believe there is also probable cause to believe that Defendants are alienating or disposing of property or intending to alienate or dispose of property obtained as a result of federal health care offenses as outlined in 18 U.S.C. § 24.

Dated:
        07/25/2024

Respectfully submitted,

Kurt Beulke
Special Agent
Federal Bureau of Investigation