24cv2944
KMM DFD

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. _____

United States of America,

        Plaintiff,

v.

1. Evergreen Recovery Inc.;
2. Evergreen Mental Health Services Inc.;
3. Ethos Recovery Clinic Inc.;
4. Second Chances Recovery Housing Inc.;
5. Second Chances Sober Living, Inc.;
6. David Backus;
7. Shawn Grygo; and
8. Shantel Magadanz,

        Defendants.

**FILED UNDER SEAL**

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND OTHER EQUITABLE RELIEF**

RECEIVED
JUL 25 2024
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

## INTRODUCTION

Plaintiff United States of America moves the Court for an *ex parte* temporary restraining order and, upon a hearing to be scheduled no more than 14 days later, a preliminary injunction to (1) freeze Defendants' assets up to and including the amount traceable to their fraudulent activities and (2) prohibit Defendants from conditioning residence in a network of sober homes they own and operate upon enrollment in Defendants' drug treatment programs, among other equitable relief. Support for this motion lies in the Anti-Fraud Injunction Statute, 18 U.S.C. § 1345, Rule 65 of the Federal Rules of Civil Procedure, and in the Court's broad discretion to grant equitable relief pursuant its inherent judicial powers.

SCANNED
JUL 25 2024
U.S. DISTRICT COURT MPLS

## BACKGROUND

The fraudulent schemes created and perpetuated by Defendants are detailed in the Affidavit of FBI Special Agent Kurt Beulke. In short, husband-and-wife Defendants David Backus and Shawn Grygo own and operate Defendants Evergreen Recovery Inc., Ethos Recovery Center Inc., and other affiliated entities. Evergreen Recovery provides outpatient substance abuse treatment in Saint Paul, Minnesota. Ethos Recovery Clinic provides outpatient opioid treatment in Spring Lake Park, Minnesota.

With the assistance of employee Defendant Shantel Magadanz, Backus and Grygo have devised and implemented a scheme to defraud the United States, the State of Minnesota, and private Managed Care Organizations certified to provide health care benefits to Minnesotans enrolled in Medicaid by submitting Medicaid claims for (1) services Evergreen Recovery did not and does not provide; or (2) services Evergreen Recovery and Ethos Recovery Clinic provide pursuant to an illegal kickback scheme whereby Evergreen Recovery and Ethos Recovery Clinic provide free housing to clients in exchange for a commitment that the clients receive a certain amount of treatment that can then be billed to Medicaid. Pursuant to this scheme, Evergreen Recovery's annual Medicaid revenue has grown from approximately $1 million in 2019 to almost $20 million in 2023. As of the date of this motion, the scheme remains operational.

**I.    Defendants**

Defendant Evergreen Recovery is a business in Saint Paul, Minnesota that is licensed by the Minnesota Department of Human Services to provide substance use disorder treatment to members of the public. Beulke Affidavit ¶ 9. Evergreen Recovery

2

currently serves approximately 600 clients, virtually all of whom receive health insurance through Medicaid, a public health insurance program jointly funded with federal and state money. *Id.* Defendant David Backus owns Evergreen. *Id.*

Defendant Ethos Recovery Clinic Inc. is a business in Spring Lake Park, Minnesota that is licensed by the Minnesota Department of Human Services to provide outpatient opioid treatment to members of the public. *Id.* ¶ 13. Defendants David Backus and Shawn Grygo own Ethos Recovery Clinic. *Id.*

Defendant Second Chances Sober Living Inc. operates or affiliates with more than 50 sober living homes throughout the Twin Cities where Evergreen Recovery clients and Ethos Recovery Clinic clients live free of charge. *Id.* ¶ 12. Second Chances Sober Living is providing housing to more than 500 clients of Evergreen Recovery and Ethos Recovery Clinic. *Id.* Defendant David Backus owns Second Chances Sober Living. *Id.*

Defendants Second Chances Recovery Housing Inc. and Evergreen Mental Health Services Inc. are related entities in Saint Paul, Minnesota, also owned by Backus and Grygo. *Id.* ¶¶ 10–11, Both offer services to clients of Evergreen Recovery and Ethos Recovery Clinic, even though neither submits billings to or receives payments from Medicaid. *Id.* ¶¶ 10–11, 14.

Defendant Shawn Grygo is primarily responsible for overseeing the day-to-day operations of Evergreen Recovery. *Id.* ¶ 16. Defendant Shantel Magadanz is responsible for operating the clinical side of Evergreen Recovery. *Id.*

## II. The Fraud Scheme

Defendants are engaged in at least two fraud schemes. Their first scheme involves

submitting claims for services Evergreen Recovery does not provide. In short, Evergreen Recovery submits Medicaid claims asserting it is providing group counseling services to clients who do not actually attend group counseling sessions. Beulke Affidavit ¶ 34(a)-(b). Group counselors at Evergreen Recovery maintain attendance logs to record which clients attend every session. *Id.* Once counselors sign these logs and submit them to Evergreen billing staff, the names of clients who did not attend the group counseling sessions are added to the previously signed logs and Evergreen bills Medicaid for providing services to everyone on the attendance logs, including those who were not present. *Id.* In recent years, as many as one third of the clients for whom Evergreen submitted Medicaid claims for "group counseling" were not present in counseling sessions. *Id.* ¶ 54.

As a part of its first scheme, Evergreen Recovery also bills Medicaid for "group counseling" when it provides meals to its clients absent any programming or services. *Id.* ¶ 34(b). Evergreen Recovery provides lunches and dinners to its clients on most days when it offers treatment. *Id.* Although clients simply retrieve a meal and do not attend or receive any counseling or programming, Evergreen Recovery submits claims to Medicaid for one hour of "group treatment" for every client to whom a meal was provided. *Id.* Collectively with the billings for clients who did not actually attend group treatment, the United States estimates Evergreen Recovery has received at least $8.9 million in Medicaid payments since 2020 for group counseling services it did not provide. *Id.* ¶ 54.

Defendants' second scheme generally entails providing free housing to clients of Evergreen Recovery and Ethos Recovery Clinic in exchange for those clients committing to receive a certain level of services for which Defendants can bill Medicaid. *Id.* Second

4

Chances Sober Living operates a network of more than 50 sober homes that house more than 500 people who receive treatment at Evergreen Recovery and Ethos Recovery Clinic. *Id.* ¶¶ 39–44. Second Chances Sober Living provides this housing free of charge; alternatively, in a few cases Second Chances Sober Living or Evergreen Recovery will pay for their clients to live at third-party properties. *Id.* In exchange for receiving this free housing, clients commit at the outset to attend a certain amount of billable programming and are threatened with losing their housing if their attendance at services for which Evergreen can bill Medicaid begins to wane. *Id.* The United States estimates that since 2017, Evergreen Recovery has received at least $28 million in Medicaid payments that were indued by these illegal kickbacks. *Id.* ¶ 55.

### III.  Dissipation of the Fraud Proceeds

David Backus and Shawn Grygo have personally reaped enormous profits from this fraudulent scheme. Beulke Affidavit ¶ 56–59. In 2022, Backus and Grygo reported income of more than $1.8 million, at least $1.7 million of which came in the form of disbursements from their businesses. *Id.* The two appear to live a lavish lifestyle involving frequent travel via private jet to Las Vegas and other destinations, luxury vehicles, designer handbags, and other indicators of private wealth. *Id.* Shantel Magadanz has also profited significantly from the fraud in the form of excessive earnings; in the first quarter of 2024 alone, for example, Evergreen Recovery paid Magadanz approximately $250,000. *Id.* ¶ 60.

Meanwhile, Evergreen Recovery and Ethos Recovery Clinic have consistently been unable to pay their employees. *Id.* ¶¶ 61–66. Although problems meeting payroll obligations have plagued Evergreen Recovery repeatedly in the past several years, the

problem has accelerated in recent months. *Id.* Some employees have received sporadic payments via cash app, but Evergreen Recovery has failed to pay employees on time in three successive pay periods. *Id.* Ethos Recovery Center also has not been able to pay its employees recently. *Id.* When Grygo and Backus have attempted to write paper checks to employees to cover missing wages in recent weeks, at least some of the checks did not clear the bank when employees attempted to deposit them. *Id.*

## ANALYSIS

The United States requests that the Court enjoin Defendants from alienating or disposing of the proceeds of the fraud or property of equivalent value. Not only is the equitable relief the United States seek authorized by the Anti-Fraud Injunction Statute, 18 U.S.C. § 1345, but the United States has shown there is probable cause to believe Defendants are committing or about to commit federal health care offenses and that they are alienating or disposing of property or intending to alienate or dispose of property obtained as a result of these federal health care offenses.

**I.       The equitable relief requested by the United States is authorized by the anti-fraud injunction statute, 18 U.S.C. § 1345.**

Broad authority exists for the equitable relief the United States seeks here. Pursuant to 18 U.S.C. § 1345, the United States may "commence a civil action in any Federal court" to enjoin persons who are "violating or about to violate" laws constituting a federal health care offense. 18 U.S.C. § 1345(a); *see also* 18 U.S.C. § 24 (defining "Federal health care offense"). The statute also gives the Court authority to freeze and/or enjoin dissipation of assets obtained from or traceable to those offenses. 18 U.S.C. § 1345(a)(2). Included in the

definition of a "federal health care offense" is the commission of "health care fraud" pursuant to 18 U.S.C. § 1347 and violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b. *See* 18 U.S.C. § 24(a)(1).

Where the United States seeks a temporary restraining order and a preliminary injunction, as it does here, Section 1345 provides that a district court "may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought." 18 U.S.C. § 1345(b). Injunctive relief sought under a federal statute such as 18 U.S.C. § 1345 does not require the showing of irreparable harm that is usually necessary for a preliminary injunction under the common law. In *Burlington Northern Ry. Co. v. Bair*, 957 F.2d 599, 601–02 (8th Cir. 1992), the Eighth Circuit declined to apply a balancing-of-the-equities approach when analyzing a request for injunctive relief permitted by statute. Rather, the court stated:

> It is a well-established rule that where Congress expressly provides for injunctive relief to prevent violations of a statute, a plaintiff does not need to demonstrate irreparable harm to secure an injunction. In such situations, it is not the role of the courts to balance the equities between the parties. The controlling issue is whether Congress has already balanced the equities and has determined that, as a matter of public policy, an injunction should issue where the defendant is engaged in, or is about to engage in, any activity which the statute prohibits. The proper role of the courts is simply to determine whether a violation of the statute has or is about to occur.

*Id.* at 601–02 (citation omitted); *see also United States v. Narco Freedom, Inc.*, 95 F. Supp. 3d 747, 754–55 (S.D.N.Y. 2015) ("[W]hen interpreting § 1345, federal courts consistently have held that the government need not identify irreparable harm for a preliminary

7

injunction to issue. Instead, the government must show that an injunction is necessary to prevent a 'substantial injury to the United States ….'") (citations omitted).

Section 1345 explicitly provides for injunctive relief to enjoin alienation or dissipation of property or to prohibit "any person from withdrawing, transferring, removing, dissipating, or disposing of" any property obtained or traceable to a "Federal health care offense." 18 U.S.C. § 1345(a)(2). To the extent property obtained by or traceable to the fraud is not available, section 1345 permits the restraint of any property of equivalent value. *Id.* In *United States v. Payment Processing Center, LLC*, 435 F. Supp. 2d 462, 467 (E.D. Pa. 2006), the court held that § 1345(a)(2) expressly granted the court authority to protect assets derived from "already completed banking and health care offenses" without having to resort to criminal process or statutory forfeiture. The court recognized the necessity of the authority to freeze assets and prevent dissipation under 18 U.S.C. § 1345: "Ending a fraud scheme would be a hollow remedy if the scheme's architects were permitted to liquidate or conceal property from the same fraud, or use ill-gotten gains to flee, while the Attorney General pursued a civil suit or presented the case to a grand jury." *Id.*

"By expressly providing for injunctive relief … Congress indicated that, as a matter of public policy, the equities supported such relief where a violation of the act has or is about to occur." *Bair*, 957 F.2d at 602. Thus, "[t]he courts are not free to reweigh Congress's balancing of the policy considerations" underlying Section 1345. *Id.*; *see also United States v. Hoffman*, 560 F. Supp. 2d 772, 776 (D. Minn. 2008) ("When the United States seeks an injunction pursuant to § 1345, the threat of substantial injury to a class of

persons for whose protection the government initiates the action may substitute for the irreparable harm injury.").

The Eighth Circuit has not yet enunciated the applicable standard of proof to determine whether a defendant is committing, or is about to commit, a predicate offense and whether that burden of proof applies to all phases of a Section 1345 action. *See United States v. Ritchie Special Credit Inv., Ltd.*, 620 F.3d 824, 836 (8th Cir. 2010) ("The federal courts are split on the proper standard … and [the Eighth Circuit] has yet to decide its standard."). While some courts have applied a probable cause standard, *see, e.g.*, *United States v. Luis*, 966 F. Supp. 2d 1321, 1326 (S.D. Fla. 2013), others have required a showing by a preponderance of the evidence, *see, e.g.*, *United States v. Hoffman*, 560 F. Supp. 2d 772, 777 (D. Minn. 2008). It is the United States' position that "probable cause" is the appropriate standard but the Court need not decide the issue because the United States can meet its burden either way.

### A. The United States has made a sufficient showing that Defendants have violated federal health care offenses.

The United States has established that Defendants are committing or are about to commit two separate offenses that fall within the definition of "federal health care offense" *See* 18 U.S.C. § 1345(a)(2); 18 U.S.C. § 24(a).

The United States has established that Defendants are engaging in a scheme to bill for treatment services they are not providing. Title 18, United States Code, Section 1347 ("health care fraud") prohibits individuals from "knowingly, voluntarily, and intentionally" executing or attempting to execute a scheme to defraud Medicaid. To convict a defendant

9

of health care fraud, the government will need to prove beyond a reasonable doubt that (1) that the defendant knowingly executed a scheme to defraud Medicaid; (2) with the intent to defraud; (3) in connection with payment for health care benefits of services; and (4) the Medicaid program is a public health care plan, affecting commerce, under which health care benefits or services were provided to individuals. *United States v. Golding*, 972 F.3d 1002, 1006 (8th Cir. 2020). As detailed in the Beulke Affidavit, substantial evidence exists that Evergreen Recovery is knowingly billing Medicaid, a public health care plan, for services it does not actually provide clients. Beulke Affidavit ¶ 34(a)–(b).

The United States has also established that Defendants have been and continue to be engaged in a scheme to provide kickbacks in the form of free housing to clients in exchange for the clients' commitment to attend services for which Defendants can bill Medicaid. To convict a defendant of violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(2)(A), the government will need to prove beyond a reasonable doubt that (1) the defendant acted knowingly and willfully; (2) the defendant offered or paid any remuneration (including any kickback, bribe, or rebate) directly or indirectly in cash or in kind to any person; (3) the remuneration was offered to induce that person to refer an individual to them for the furnishing of any service; and (4) such service was one for which payment may be made in whole or in part under a federal health care programs. *Id.*; *see also United States ex rel. Fesenmaier v. Cameron-Ehlen Grp., Inc.*, Case No. 13-cv-3003, 2021 WL 101193, at *2 (D. Minn. Jan. 12, 2021). As detailed in the Beulke Affidavit, substantial evidence exists that Evergreen Recovery and Ethos Recovery Clinic are knowingly providing clients free housing in exchange for a commitment that the clients

receive a certain level of services from Evergreen Recovery and Ethos Recovery Clinic for which Defendants can then bill Medicaid. Beulke Affidavit ¶¶ 39–41.

The fraudulent kickback scheme in which Evergreen Recovery and Ethos Recovery Clinic are engaged is substantially similar to a scheme enjoined by the court in *United States v. Narco Freedom, Inc.*, 95 F. Supp. 3d 747 (S.D.N.Y. 2015). There, the government accused the operator of a Medicaid subsidized drug treatment program of violating the Anti-Kickback Statute by providing below-market housing at its houses only to those who committed to attend the provider's treatment program. *Id.* at 748–49. The court held that the operator was providing "remuneration" to clients in the form of low-income housing, that one purpose of the operator's houses was to induce Medicaid beneficiaries to enroll in operator's programs, and that equitable concerns weighed in favor of granting an injunction pursuant to 18 U.S.C. § 1345. *See id.* at 754–60.

Here too, these fraudulent activities on the part of Defendants constitute federal health care offenses as referenced in 18 U.S.C. § 1345.

    **B.**    **The United States has made a sufficient showing that Defendants are alienating or disposing of property or intend to alienate or dispose of property obtained as a result of their commission of federal health care offenses.**

Finally, there is probable cause to believe Defendants are alienating or disposing of property or intend to dispose of property obtained as a result of their commission of federal health care offenses. David Backus, Shawn Grygo, and Shantel Magadanz have all obtained enormous personal benefits from this fraudulent scheme and engage in extravagant spending on expensive vacations and cars and other luxury goods. Meanwhile,

Evergreen Recovery and Ethos Recovery Clinic have consistently been unable to pay their employees, problems that have only accelerated in recent months.

## II. The asset freeze requested is also supported by the inherent equitable powers of the Court.

The broad discretion that attends the issuance of a restraining order or preliminary injunction encompasses a court's power to enjoin the dissipation of assets. Under common law principles, courts have long enjoined defendants from dissipating assets to preserve property that may ultimately be the subject of final equitable relief. *See, e.g., Levi Straus & Co. v. Sunrise Int'l, Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); *Reebok Int'l, Ltd. v. Marnatech Enter., Inc.*, 970 F.2d 552, 561 (9th Cir. 1992) (holding that district court could freeze assets of defendants pursuant to court's "inherent equitable powers" to issue provisional remedies ancillary to its authority to provide final equitable relief); *Kemp v. Peterson*, 940 F.2d 110, 113–14 (4th Cir. 1991) ("Although 'freezing' assets is an extraordinary remedy, there is no question as to the general authority of the court to fashion the remedy it did."); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 406, 416 (2d Cir. 1985) ("We find no abuse of the district court's discretion in its conclusion that this is an appropriate case for the issuance of injunctive relief" prohibiting former owner of debtor corporation from transferring certain assets).

The Eighth Circuit has long recognized the inherent powers of a court of equity. In *Panhandle Eastern Pipe Co. v. Fed. Power Comm.*, 154 F.2d 909 (8th Cir. 1946), the court

of appeals refused to modify a stay order and, in the process, discussed the power of a court of equity:

> A Court of equity "in the exercise of its discretion, frequently resorts to the expedient of imposing terms and conditions upon the party at whose instance it proposed to act. The power to impose such conditions is founded upon, and arises from the discretion which the court has in such cases, to grant, or not to grant, the injunction applied for. It is a power inherent in the court, as a court of equity, and has been exercise from time immemorial."

*Id.* at 911 (quoting *Inland Steel Co. v. United States*, 306 U.S. 153, 156 (1939)); *see also Amalgamated Ass'n of Street, Electrical Ry. & Motor Coach Employees of America v. Dixie Motor Coach Corp.*, 170 F.2d 902, 904 (8th Cir. 1948) (recognizing the inherent powers of a court of equity to issue injunctions).

More recently, in *Fed. Trade Comm'n v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312 (8th Cir. 1991), the Eighth Circuit held that a district court had the power to issue an injunction granting monetary equivalent of rescission for customers who had been deceived by fraud, even though such relief was not explicitly spelled out in the applicable statute. The court stated:

> Nothing in the wording of the statute expressly precludes ancillary equitable relief. Where Congress allows resort to equity for the enforcement of a statute, all the inherent equitable powers of the district court are available or the proper and complete exercise of the court's equitable jurisdiction, unless the statute explicitly, or "by a necessary and inescapable inference," limits the scope of that jurisdiction.

*Id.* at 1314 (citations omitted).

Similarly here, Congress resorted to equity in the enforcement of Section 1345 by referencing in the statute a district court's authority "to take other action as is warranted to prevent a continuing and substantial injury." 18 U.S.C. § 1345(b). Thus, a district court

acting pursuant to this subsection possesses all its inherent equitable powers to fashion a preliminary injunction and "take other action."[1] *See United States v. Petters*, Case No. 08-cv-5348, 2009 WL 803482, at *2 (D. Minn. March 25, 2009) ("The purpose of freezing assets in a receivership under 18 U.S.C. § 1345 is to preserve the status quo and prevent assets from being dissipated or diverted.") (citations omitted).

The United States has presented substantial evidence tracing at least $28 million dollars of federal health care funds that have been paid to Evergreen Recovery and distributed through its affiliated network of entities to enrich Defendants Backus, Grygo and Magadanz. Our investigation suggests Defendants have dissipated and will continue to dissipate these funds. Thus, the Court should freeze the assets of the Defendants up to and including $28 million to prevent the dissipation of that amount.

## III. The additional relief requested is also supported by the inherent equitable powers of the Court.

In addition to the relief sought above, the United States also requests that the Court exercise the power given to it under 18 U.S.C. § 1345(b) to "take such other action … as is warranted to prevent a continuing and substantial injury to the United States or to any

---

[1] Even in cases where the assets cannot be traced, courts have recognized that an order freezing an equivalent amount of assets is justified. *See, e.g.*, *United States v. DBB, Inc.*, 180 F.3d 1277, 1286 (11th Cir. 1999) (holding that "where the property obtained through fraud is not as easily identified," a district court may restrain dissipation of "an amount of the defendant's assets equal to that obtained through fraud," provided the United States can show that a defendant is disposing or intends to dispose of property). 180 F.3d a 1286; *United States v. Sriram*, 147 F. Suppp. 2d 914, 947 (N.D. Ill. 2001) ("Once again, we begin with statutory language, which states that what may be frozen is 'property which is traceable' to the predicate violation, *or if that property is unavailable, property 'of equivalent value.'*") (emphasis added).

person or class of persons for whose protection the action is brought."

Defendants provide substance abuse treatment and related services to as many as 600 vulnerable people in the Twin Cities, most of whom now rely on Defendants to provide them with housing as a result of Defendants' kickback scheme. To protect these clients and enjoin the operation of the fraudulent schemes during the course of the government's investigation, the United States requests that the Court enjoin Defendants from (1) conditioning residence in Second Chances Sober Homes upon enrollment in Defendants' drug treatment programs; (2) conditioning payment of other rental or housing benefits to third parties upon enrollment in Defendants' drug treatment programs; (3) prohibit Defendants from closing any Second Chances Sober Living residence without advanced notice to the United States; and (3) fully comply with all requirements of the statutory schemes by which they are governed, including Minn. Stat. §§ 245A.04, subds. 5, 15a; 245G.07; 245G.09; and 245G.13 to 245G.15, as outlined in the United States' Complaint.

## CONCLUSION

The United States respectfully requests that the Court issue the equitable relief sought to prevent the dissipation of assets obtained as a result of the health care fraud by the Defendants.

Dated: July 25, 2024

ANDREW M. LUGER
United States Attorney

*s/Emily M. Peterson*

BY: EMILY M. PETERSON
Assistant U.S. Attorney
Attorney ID No. 0395218
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Emily.Peterson@usdoj.gov
(612) 664-5600

Attorneys for United States of America