UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 24-CV-02944-KMM-JFD

United States of America,

Plaintiff,

v.

1. Evergreen Recovery Inc.:
2. Evergreen Mental Health Services Inc.;
3. Ethos Recovery Clinic Inc.;
4. Second Chances Recovery Housing Inc.;
5. Second Chances Sober Living, Inc.;
6. David Backus;
7. Shawn Grygo; and
8. Shantel Magadanz,

Defendants,

**DEFENDANT SHANTEL MAGADANZ'S MEMORANDUM IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

## PROCEDURAL HISTORY

The United States brought an action for an *ex parte* temporary restraining order. Doc. 1. The *ex parte* order was granted by the Court. (Doc. No. 11). An evidentiary hearing is scheduled for August 8, 2024. Pursuant to the Scheduling Order (Doc. No. 12), Defendant submits her memorandum of law, declaration and exhibits.

## FACTS

This matter arises out of the conduct of various businesses, namely Evergreen Recovery Inc., Evergreen Mental Health Services Inc., Ethos Recovery Clinic Inc., Second Chances Recovery Housing Inc., and Second Chances Sober Living, Inc., and the

provision of housing for persons who are involved in outpatient treatments for addiction issues with payments being made by Medicaid. Agent Beulke Dec. (Doc. No. 2) at ⁋ 39.

Defendant David Backus is the sole owner of Evergreen Recovery Inc. and Second Chances Sober Living Inc. Agent Beulke Dec. (Doc. No. 2) at ⁋ 7. Defendant David Backus and his wife, Defendant Shawn Grygo, also are fifty percent owners of Evergreen Mental Health Services Inc., Second Chances Recovery Housing, Inc., and Ethos Recovery Clinic Inc. Agent Beulke Dec. (Doc. No. 2) at ⁋ 8.

There was a raid conducted on the premises of the above mentioned businesses on July 30, 2024. Previously, all Defendants were served with CIDs.

Defendant Shantel Magadanz was the Chief Clinical Officer of Defendant Evergreen Recovery Inc. Agent Beulke Dec. (Doc. No. 2) at ⁋ 16. Defendant Magadanz left that position on July 26, 2024. Magadanz Dec. at ⁋ 1.

The Government alleges a violation of Title 18, United States Section 1347 and Title 42, United States Code Section 1320a-7b. Agent Beulke Dec. (Doc. No. 2) at ⁋ 68. *See United States v. Narco Freedom, Inc.*, 95 F. Supp. 3d 747 (S.D.N.Y. 2015).

## ANALYSIS

### I. COURT SHOULD NOT ISSUE A PRELIMINARY INJUNCTION AGAINST DEFENDANT MAGADANZ. IF ONE IS ISSUED, THE PRELIMINARY INJUNCTION SHOULD BE LIMITED IN SCOPE AND ACCOUNT FOR HER NECESSARY LIVING EXPENSES.

A. Applicable Law.

A preliminary injunction is "an extraordinary and drastic remedy" for which the moving party, i.e., the Government, bears the burden. *See Mazurek v. Armstrong*, 520 U.S. 968, 972, (1997).

Section 1345, Title 18 of the United States Code provides:

> If a person is— (A) violating or about to violate this chapter or section 287, 371 (insofar as such violation involves a conspiracy to defraud the United States or any agency thereof), or 1001 of this title; or (B) committing or about to commit a banking law violation as defined in section 3322(d) of this title, the Attorney General may commence a civil action in any Federal court to enjoin such violation.
> If a person is alienating or disposing of property, or intends to alienate or dispose of property, obtained as a result of a banking law violation (as defined in section 3322(d) of this title), or property which is traceable to such violation, the Attorney General may commence a civil action in any Federal court—(A) to enjoin such alienation or disposition of property; or (B) for a restraining order to— (i) prohibit any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent value; and (ii) appoint a temporary receiver to administer such restraining order. (3) A permanent or temporary injunction or restraining order shall be granted without bond. The court shall proceed as soon as practicable to the hearing and determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought. A proceeding under this section is governed by the Federal Rules of Civil Procedure, except that, if an indictment has been returned against the respondent, discovery is governed by the Federal Rules of Criminal Procedure.

Any assets to be frozen must in some way be traceable to the allegedly illicit activity. *See, e.g.,United States v. Brown,* 988 F.2d 658, 664 (6th Cir.1993); *United States*

*v. Savran & Assoc.*, 755 F. Supp. 1165, 1182-83 (E.D.N.Y. 1991); *United States v. Jone*s, 652 F.Supp. 1559, 1560 (S.D.N.Y.1986).

However, consistent with conventional preliminary injunction analysis, once ongoing or likely to reoccur fraud is established to a reasonable probability, it is authorized to look-back at funds reasonably traceable to fraud and preliminarily impound the whole amount or, within the Court's broad discretion, any portion of it. *United States v. Fang*, 937 F. Supp. 1186, 1198 (D. Md. 1996).

The Court examines four factors when considering whether to grant preliminary injunctive relief. *See Dataphase Sys., Inc. v. C L Sys., Inc*., 640 F.2d 109, 112–14 (8th Cir.1981); *United States v. Hoffman*, 560 F. Supp. 2d 772, 775-76 (D. Minn. 2008); *Northland Ins. Cos. v. Blaylock*, 115 F.Supp.2d 1108, 1116 (D.Minn.2000).

Those factors are (1) the threat of irreparable harm to the movant in the absence of relief, (2) the balance between that harm and the harm that the relief would cause to the other litigants, (3) the likelihood of the movant's ultimate success on the merits and (4) the public interest. *See Dataphase*, 640 F.2d at 112–14. The Government bears the burden of proof concerning each factor. *Hoffman*, 560 F. Supp. 2d at 776; *see also Gelco v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987).

No single factor is determinative. *Hoffman*, 560 F. Supp. 2d at 776; *see also Dataphase,* 640 F.2d at 113. Instead, the Court considers the particular circumstances of each case, remembering that the primary question is whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo

until the merits are determined." *Hoffman*, 560 F. Supp. 2d at 776; *see also Dataphase,* 640 F.2d at 113.

A predicate for the Government's Section 1345 claim is 18 U.S.C. § 1347, which without question is a health care offense: the statute is titled "Health Care Fraud," and creates criminal liability for one who knowingly and willfully does or attempts to defraud a health care benefit program, or to obtain by false or fraudulent representations money under the control of a health care benefit program. *United States v. Sriram*, 147 F. Supp. 2d 914, 942 (N.D. Ill. 2001).

B. Analysis.

The Supreme Court has counseled caution in expanding the sweep of that authority to freeze assets beyond the specific grant of authority made by Congress. *In Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc*., 527 U.S. 308 (1999).

*1. Irreparable Harm.*

The Court must first find that irreparable harm will result without injunctive relief and that such harm will not be compensable by money damages.[1] *Hoffman*, 560 F. Supp. 2d at 776; *see also Blaylock,* 115 F.Supp.2d at 1116. Possible or speculative harm is not enough. *See Graham Webb Int'l v. Helene Curtis, Inc.,* 17 F.Supp.2d 919, 924 (D.Minn.1998).

[1] Defendant Magadanz acknowledges that as the United States seeks an injunction pursuant to § 1345, the threat of substantial injury to a class of persons for whose protection the Government initiates the action may substitute for the irreparable harm injury to the United States. *Hoffman*, 560 F. Supp. 2d at 776; *Barnes,* 912 F.Supp.at 1197.

Rather, the Government must show a significant risk of harm exists. *Johnson v. Bd. of Police Comm'rs,* 351 F.Supp.2d 929, 945 (E.D.Mo.2004). The absence of such a showing is sufficient to deny a preliminary injunction. *See Gelco,* 811 F.2d at 420.

First, the Court is reminded that Defendant Magadanz was never an equity-holder in the corporate Defendants. [Agent Beulke Dec. (Doc. 2) at ¶¶ 7, 8]. Rather, she was the Chief Clinical Officer. [Agent Beulke Dec. (Doc. 2) at ¶ 6].

Second, Defendant Magadanz is no longer employed by Defendant Evergreen Recovery Inc, having left employment on July 26, 2024.

As a result, should the Court issue an injunction, it must be so tailored to not impose upon her the disclosure and cooperation duties placed on the other Defendants who have access to records and responsibilities to the patients.

As will be discussed fully about the alleged criminal activity[2] in factor three below, Defendant Magadanz's alleged involvement is not described in great detail as are

[2] The word "offense" is most commonly used in the law to refer to a violation of the criminal codes and not a breach of obligations under civil law. *See Brown v. Hoffman,* 843 F.2d 1386 1988 WL 30670 (4th Cir.1988). While the word "offense" is used in various senses, it generally implies a felony or misdemeanor infringing public rather than merely private rights and is punishable under the criminal laws — although it may also include violations of a criminal statute for which the remedy is merely a civil suit to recover the penalty.) While there are times that the word "offense" may connote a civil violation, the context of Section 1345 indicates that is not the case here. Each of the specifically enumerated statutory predicates for an injunction under Section 1345 is a violation of the criminal code, and not of civil law. Using the statutory construction tool of *ejusdem generis,* the term "Federal health care offense" to apply to the same type of violation as the specifically enumerated violations that precede that phrase: that is, to criminal violations and not civil law breaches. *See, e.g., AT & T Corp. v. Iowa Utilities Board,* 525 U.S. 366, 408, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999) ("[u]nder the principle

the claims against the other Defendants. See Agent Beulke's Declaration (Doc. No. 2) at ¶¶ 48 and 60.

For the fiscal year 2023, Defendant Magadanz received a salary of $115,282.85. [Dec. Magadanz at ¶ 2]. This is well in line with the median range of Clinical Directors of such clinics.[3]

In 2024, Defendant Megadanz received $703,793.19 in salary [Dec. of Magadanz at ¶ 3]. As outlined by Agent Beulke, she did obtain several high-end vehicles two of which have been returned to the dealership. [Dec. of Agent Beulke at ¶ 60].

Thus, while an injunction freezing assets might be security warranted, *see Fang*, 937 F. Supp. at 1198, Defendant Magadanz has few assets to freeze for use in the event restrictions were to be ordered.

2. *Balance of Harms*.

Under the second factor, the Court considers whether the irreparable harm to the Government outweighs any potential harm to the Defendants should the injunction issue. *See Dataphase,* 640 F.2d at 114. In § 1345 terms, this factor is comparable to the ongoing fraudulent scheme requirement in the statute. *Hoffman*, 560 F. Supp. 2d at 776; *see also*

---

of *ejusdem generis,* when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration"). While *ejusdem generis* does not apply where the context of the document or statute reflects that the drafter intended a different interpretation, there is no such intent reflected in the statutory language of Section 1345.

[3] https://www.glassdoor.com/Salaries/director-of-counseling-salary-SRCH_KO0,22.htm

*Barnes,* 912 F.Supp. at 1197 (relating the balance of harms factor to the possible continuing threat of defendant's actions).

For instance, if the threat of irreparable harm to the movant is slight when compared to likely injury to the other party, the movant carries a particularly heavy burden of showing a likelihood of success on the merits. *ASICS Corp. v. Target Corp.,* 282 F.Supp.2d 1020, 1025 (D.Minn.2003).

Given Defendant Magadanz's lack of assets, she suffers harm; indeed likely irreparable harm herself. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975); *accord John B. Hull, Inc. v. Waterbury Petroleum Prod., Inc*., 588 F.2d 24, 28 (2d Cir. 1978); *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc*., 805 F.2d 351, 356 (10th Cir. 1986).

Counsel for the Government has included that the Court's current temporary restraining order precludes Defendant Magadanz from spending any money at all – including grocery shopping and the use of credit cards for necessities, etc.

Defendant Magadanz currently has a bank account worth approximately $33,592.30. [Magadanz Dec. at ⁋ 9]. She has had to have family members help her retain counsel so as to not violate the restraining order in place.

She will have to seek new employment with the cloud of a pending criminal investigation and a civil fraud injunction pending against her. Her licensure may well be under review. Agent Beulke Dec. (Doc. No. 2) at ⁋ 48.

She suffers harm as well. *See Doran*, 422 U.S. at 932; *accord John B. Hull, Inc*., 588 F.2d at 28; *Tri-State Generation & Transmission Ass'n, Inc*., 805 F.2d at 356.

Then, if the Court grants the preliminary injunction against her, the Court needs to exercise its discretion in allowing her access to sufficient funds to meet her needs for living expenses, counsel fees or perhaps limiting the duration of the freeze as well. *United States v. Thier,* 801 F.2d 1463, 1469 (5th Cir. 1986); *Fang*, 937 U.S. at 1200. See Exhibit C to Dec. of Defendant Magadanz (monthly budget).

After all, the reality is that an asset freeze can exert "extraordinary leverage" against a Defendant in a case such as this. *Sriram*, 147 F. Supp. 2d at 948; *Fang*, 937 F. Supp. At 1202.

Given the disparity of resources available, this factor weighs in favor of Defendant Magadanz, not the Government.

3. *Likelihood of Success*.

The third factor questions whether the Government will likely prevail on the merits. While not overriding the other factors, the likelihood of success on the merits is preeminent. *Hoffman*, 560 F. Supp. 2d at 777; s*ee also Halikas v. Univ. of Minn.,* 856 F.Supp. 1331, 1335 (D.Minn.1994).

The United States demonstrates a likelihood of success on the merits under § 1345 by proving a violation of the predicate offense statute by a preponderance of the evidence. *Hoffman*, 560 F. Supp. 2d at 777*; see also Barnes,* 912 F.Supp. at 1197; *Brown,* 988 F.2d at 663 (6th Cir.1993).

Moreover, where the Government's legal position is supported in governing law, it will likely meet its burden on this factor. *Baker Electric Co-op, Inc. v Chaske*, 28 F. 3d 1466, 1472 (8th Cir. 1994).

The Government's burden here is to show that Defendant Magadanz has violated the statute, not just some of the Defendants.

As noted above, Agent Beulke's claim regarding Defendant Magadanz is nebulous—as opposed to the other Defendants. [Agent Beulke Dec. (Doc. No. 2) at ¶¶ 48, 60].

4. *Public Interest*.

Finally, the Court considers the public interest. *Hoffman*, 560 F. Supp. 2d at 777. By expressly legislating to make injunctive relief available in this setting, Congress has already declared such fraudulent activity to be harmful to the public. *See Fang*, 937 F.Supp. at 1199.

**CONCLUSION.**

Unlike the other Defendants, Defendant magadanz is not as involved in the allegations raised by the Government. Interestingly enough, her salary in 2022 was not remarkable. Her later salary is admittedly very high.

Her assets, however, are not. She has little assets to her name and needs to access those for her living expenses.

Defendant Magadanz asks the Court to limit the issuance of any preliminary injunction to the other co-Defendants.

Respectfully submitted,

SAVAGE WESTRICK, PLLP

Dated: August 6, 2024

*/s/ John G. Westrick*
John G. Westrick (#206581)
900 American Blvd. E., #241
Bloomington, MN 55420
Ph: (651) 292-9603
Fax: (651) 343-7523
Email: westrick@savagewestrick.com

ATTORNEY FOR DEFENDANT MAGADANZ