UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 0:24-cv-02944-KMM-JFD

United States of America,

Plaintiff,

v.

Evergreen Recovery Inc.;
Evergreen Mental Health Services Inc.;
Ethos Recovery Clinic Inc.;
Second Chances Recovery Housing Inc.;
Second Chances Sober Living, Inc.;
David Backus;
Shawn Grygo; and
Shantel Magadanz,

Defendants.

**UNITED STATES'
MEMORANDUM IN
SUPPORT OF MOTION FOR
DISTRIBUTION OF
REMAINING
RECEIVERSHIP FUNDS**

## **INTRODUCTION**

Plaintiff United States of America (United States) submits this memorandum in support of its Motion for Distribution of Remaining Receivership Funds. The Receiver's recent update to the Court reflects that the partial distribution of funds to employees of the Evergreen entities is substantially complete. The United States now brings this motion for distribution of the remaining receivership funds (after receivership fees and expenses are paid and the partial distribution to employees is complete) to the United States in resolution of the ongoing civil False Claims Act case giving rise to this receivership, or alternatively, pursuant to its forfeiture authority in the related criminal case. Under 31 U.S.C. § 3713, the Priority Statute, the United States has priority over other creditors to the remaining funds in the receivership. In asserting its rights under that statute, the United States seeks

to recover money fraudulently taken from the Medicaid program.

## BACKGROUND

**A.    This Action and Receivership**

On July 25, 2024, the United States filed a Complaint under 18 U.S.C. § 1345 seeking a permanent injunction and other equitable relief against eight Defendants—five Evergreen entity Defendants and three individual Defendants, David Backus, Shawn Grygo, and Shantel Magadanz.  *See* Dkt. No. 1.  Alleging that the Defendants were perpetrating a scheme to defraud the Medicaid program, including by billing the program for substance use disorder treatment services they did not provide, the United States sought to freeze the Defendants' assets and enjoin their unlawful behavior.  *See id.*

The United States' Complaint was supported by the Affidavit of FBI Special Agent Kurt Beulke.  *See* Dkt. No. 2.  The Affidavit referenced parallel criminal and civil investigations regarding Evergreen and its associates and laid out the basis for probable cause to believe that Defendants were engaged in health care fraud.  *Id.*  The Affidavit described how the individual Defendants appeared to be personally profiting as a result of the fraud, while, in contrast, Evergreen Recovery had not consistently paid its employees. *Id.* at ¶¶ 56-61.  The Affidavit described fraud losses in the millions of dollars, and the Court found that "it is more likely than not that the amount traceable to Defendant's fraudulent conspiracy is at least $28 million."  *Id.* ¶ 53; Dkt. 44 at 3.

On July 25, 2024, the Court issued an ex parte Temporary Restraining Order at the government's request and, on August 9, 2024, a Preliminary Injunction freezing certain of the Defendants' assets and ordering other equitable relief.  *See* Dkt. Nos. 11, 44.  The

Court's Preliminary Injunction Order noted the collapse of the Evergreen entities and stated that "absent entry of this Preliminary Injunction, remaining assets might not be available to recover as restitution to victims, or to make whole creditors to the defendant entities, including former employees of the Evergreen entities who have not been paid in weeks or months. In addition, any remaining assets would be unavailable for forfeiture or to cover possible civil or criminal penalties or fines." *See* Dkt. No. 44 at 2-3. The Court appointed the Receiver to take control of the Defendant entities and collect and manage their assets. *See id.* at 8-12.

**B.     The Criminal Case**

On December 18, 2024, the United States filed a criminal Indictment in this District against Defendants Shawn Grygo and Shantel Magadanz, in addition to Heather Heim – all individuals associated with the Evergreen entities. *See United States of America v. Shawn Grygo, et al.*, 24-cr-00337-KMM-JFD.

On October 21, 2025, Shantel Magadanz and Heather Heim pled guilty to conspiracy to commit wire fraud in connection with their fraudulent billing practices at Evergreen. *Id*. Dkt. Nos. 79-82. The criminal case against the sole remaining Defendant, Shawn Grygo, is set for trial on July 13, 2026. *Id.* Dkt. No. 112.

In the plea agreements of Magadanz and Heim, the defendants agreed in the factual basis that, "Evergreen operated as a highly exploitive drug and alcohol treatment program that reaped enormous profit through its fraudulent billing practices at the expense of addiction clients and taxpayers. Over the seven-year period that Evergreen operated, the program grew and the owners fraudulently attained more and more money as a result of

their widespread billing fraud." *Id.* Dkts. 80, 82. They each agreed to a fraud loss amount of at least $5,625,272. *Id.*

**C.    The False Claims Act Qui Tam Action**

On August 18, 2023, in a case styled *United States of America and the State of Minnesota ex rel. Patrick Johnson v. Evergreen Recovery, Inc.*, 23-cv-2533-KMM-JFD (D. Minn.), relator Patrick Johnson filed a qui tam action under the False Claims Act alleging that Evergreen had submitted fraudulent claims for payment to the Minnesota Medicaid program for substance abuse treatment services. On October 21, 2025, following the government's notice of declination and request for unsealing filed on October 20, 2025, the Court unsealed the docket in that case. *See id.* Dkt. No. 29. While, after the criminal Indictment and the collapse of Evergreen, the government declined to intervene in the civil case against Evergreen under the False Claims Act, the civil False Claims Act case remains pending and is being pursued by the qui tam relator, with the government remaining as a party in interest. *See* 31 U.S.C. § 3730(b)(4), (c)(3).

**D.    The Partial Distribution to Evergreen Entity Employees and Current Status**

On October 3, 2025, the Receiver in this action moved for partial distribution of receivership funds based on a Minnesota Department of Labor audit and compliance order. The Receiver sought to distribute $250,000 to employees of the receivership entities as payment of unpaid back wages to those employees, calculated on a modified pro rata basis. *See* Dkt. No. 68. The United States did not object to that motion under the circumstances of this case. *See* Dkt. No. 73.

On December 1, 2025, the Court granted the Receiver's Motion for Partial

Distribution to the Evergreen entity employees as set forth in that Order. *See* Dkt. No. 79.

On April 29, 2026, the Receiver filed a Status Update with the Court. *See* Dkt. No. 82. The Receiver reported that the Receiver had distributed 128 out of the 131 authorized payments to employees and was actively working to resolve the remaining 3 payments, which had special issues. *Id.*

**E.     The Government's Motion**

Pursuant to the Court's Order dated April 15, 2026, Dkt. No. 81, the United States now brings this motion seeking distribution of the remaining receivership funds to the United States. It has met and conferred with the Receiver regarding this motion.

**ANALYSIS**

The government respectfully requests that the remaining funds in the receivership, after completion of the partial distribution to employees and payment of the necessary fees and expenses of the receivership, be distributed to the United States. The Priority Statute requires this, and the United States seeks to apply these funds to resolve the pending False Claims Act litigation against Evergreen, or, alternatively, to forfeit them in connection with the related criminal case.

**I.      The Priority Statute Gives the United States Priority to the Distribution of the Remaining Receivership Funds.**

The Priority Statute, 31 U.S.C. § 3713, provides: "A claim of the United States Government shall be paid first when-- (A) a person indebted to the Government is insolvent and-- … (iii) an act of bankruptcy is committed…." 31 U.S.C. § 3713(a)(1)(A)(iii). The Priority Statute is construed liberally in favor of the United States to further its purpose of

securing revenue to pay public debts. *See e.g., United States v. Moore*, 423 U.S. 77, 81-82 (1975) ("the priority proceeds from motives of public policy, in order to secure an adequate revenue to sustain the public bur[dens] and discharge the public debts…."); *Bliss v. United States*, 44 F.2d 909, 911 (8th Cir. 1930).

A "claim of the United States Government" has been expansively construed to encompass a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured…." *United States v. Moriarity*, 8 F.3d 329, 334 (6th Cir. 1993) (quoting 11 U.S.C. § 101(5) and holding that the United States has a "claim" under the Priority Statute even where its action for money damages was barred by the statute of limitations, where it could still assert its right to payment in other ways); *United States v. Moore*, 423 U.S. 77, 85 (1975); *Viles v. C.I.R.*, 233 F.2d 376, 380 (6th Cir. 1956) (tax liability given priority even where contested and not formally assessed); *see also* 31 U.S.C. § 3701(b)(1)(G).[1]

Here, the United States has a claim to the remaining funds by virtue of the pending False Claims Act case filed in 2023 giving rise to this receivership, as well as the related criminal case in which there are forfeiture allegations in the Indictment, two guilty pleas, and agreed upon restitution amounts in the plea agreements totaling over one million dollars. *See United States of America v. Shawn Grygo, et al.,* 24-cr-00337-KMM-JFD (D. Minn.), Dkts. 80, 82, ¶¶ 12, 14. The criminal pleas of Magadanz and Heim with respect to

---

[1] The terms "claim" and "debt" are used interchangeably in the Priority Statute. 31 U.S.C. § 3701(b)(1); *United States v. Renda*, 709 F.3d. 472, 479 n.3 (5th Cir. 2013).

the fraudulent conduct of Evergreen are conclusive under the False Claims Act. *See* 31 U.S.C. § 3731(e) ("Notwithstanding any other provision of law, the Federal Rules of Criminal Procedure, or the Federal Rules of Evidence, *a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.*") (emphasis added).[2]

According to the Receiver, the debts of the Evergreen entities eclipse the assets in the receivership, making them insolvent. *See* Dkt. No. 70 ("The debts owed by the Receivership Entities far outweigh the Receivership Funds.").[3] *See also e.g., People of State of Ill. ex rel. Gordon v. Campbell*, 329 U.S. 362, 369-70 (1946) ("the record demonstrates that the debtor was insolvent at the time of the appointment of the receiver, for when its property was liquidated there was not enough to satisfy the claims of the two contesting creditors at the bar."). And the Court's appointment of the Receiver to take broad control of the affairs of the Evergreen entities constitutes an "act of bankruptcy"

---

[2] The United States' declination in the civil qui tam following the criminal indictment does not change this analysis. The United States remains the real party in interest in a declined qui tam. *E.g., United States of America ex rel. James Zissler v. Regents of the University of Minnesota*, 154 F.3d 870, 872 (8th Cir. 1998) ("Even in cases where the United States has declined to intervene, 'the structure of the qui tam procedure, the extensive benefit flowing to the government from any recovery, and the extensive power of the government to control the litigation have to be held to weigh heavily for holding that it remains the real party in interest'").

[3] The term "person" in the Priority Statute encompasses corporations. *See Moore*, 423 U.S. at 78-86; *Renda*, 709 F.3d at 479 n.5.

7

under 31 U.S.C. § 3713(a)(1)(A)(iii). *See e.g., United States v. Emory*, 314 U.S. 423, 426 (1941); *Campbell*, 329 U.S. at 369. Accordingly, the United States' claim to the distribution of the remaining funds in the receivership has priority over other creditors in the receivership.

## II.    The United States' Proposed Application of the Remaining Funds.

If the Court grants the United States' motion, the United States will seek to apply the remaining receivership funds as described below.[4]

The United States will first seek to resolve the pending civil False Claims Act case against Evergreen. This entails the United States entering into a False Claims Act settlement agreement with Evergreen Recovery, Inc. and relator Patrick Johnson, pursuant to which the remaining receivership funds would be applied to pay the defrauded state and federal government programs. Pursuant to the Court's receivership order, Dkt. No. 44, the Receiver is allowed to "compromise or settle legal actions wherein the Receiver or any of the Evergreen Entities is a party commenced prior to or subsequent to this Order with the authorization of this Court." *Id.* ¶ B.7 (pg. 10). The United States believes this a workable path based on its initial discussions with the relator, the State of Minnesota, and the Receiver.

Alternatively, if a False Claims Act settlement is not reached, the United States will seek to forfeit the remaining funds in connection with the related criminal case. That

---

[4] The United States understands that after payment of the Evergreen entity employees and the fees and expenses of the receivership, there are limited funds remaining in the receivership in comparison to the scope of the Evergreen fraud.

Indictment, which is based on fraudulent conduct by Evergreen associates that also necessitated this action, contains criminal forfeiture allegations under 18 U.S.C. § 982 and 21 U.S.C. § 853(p). *See* 24-cr-337, Dkt. Nos. 1, 52. Two guilty pleas have been entered in that action in which the defendants agreed to forfeiture and restitution in the plea agreements. The remaining receivership assets should, therefore, be distributed to the United States to be held with the assets the United States alleges are subject to forfeiture in the Indictment. Returning funds to defrauded victims, which includes the state's Medicaid program, is a purpose the Court recognized in its Preliminary Injunction Order. *See* Dkt. No. 44 at 2-3.

Accordingly, if the Court grants its motion, the United States seeks 60 days in which to effectuate the settlement agreement or the forfeiture of the remaining assets.

## CONCLUSION

The government respectfully requests that the remaining receivership assets be distributed to the United States under the Priority Statute to allow the funds to be returned to defrauded government programs.

Dated: May 15, 2026

DANIEL N. ROSEN
United States Attorney

*s/ Ann M. Bildtsen*

BY: ANN MARIE BILDTSEN
Assistant U.S. Attorney
Attorney ID Number 271494
300 South Fourth Street, Suite 600
Minneapolis, MN 55415
Phone: 612-664-5600
Email: Ann.Bildtsen@usdoj.gov
Attorneys for the United States

9